Filed 5/27/26  P. v. Harris CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B343664 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA284216) |
| v. | |
| CHRISTOPHER HARRIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine Olmedo, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Christopher Harris of first degree murder and found true that he personally and intentionally discharged a firearm causing great bodily injury and death. The trial court subsequently denied Harris's petition for resentencing under Penal Code section 1172.6 at the prima facie stage.[1] We conclude the record of conviction conclusively establishes Harris was convicted of murder under a still valid theory and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2004, Eric "Stoney" Alexander was shot and killed on a street in Los Angeles.[2] A witness heard the gunshots and saw a black SUV leave the scene. At trial, witnesses testified that Harris's sister Kwana[3] said that she contacted Alexander to lure him to a location and then drove Harris to meet him, and that Harris admitted that he shot Alexander.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We take the facts of the underlying crime from the summary of the evidence contained in our prior opinion affirming Harris's and Kwana's convictions. (*People v. Harris* (May 9, 2013, B222583) [nonpub. opn.].) We provide this factual summary only to give context to Harris's arguments. We do not rely on these facts to determine whether Harris has made a prima facie showing of resentencing eligibility under section 1172.6.

[3] Because both siblings share the same last name, we use Kwana's first name in this opinion for clarity.

In 2006, the People charged Harris and Kwana with Alexander's murder (§ 187, subd. (a)), in addition to other crimes.[4]  The information alleged that Harris personally and intentionally discharged a firearm causing great bodily injury and death to Alexander (§ 12022.53, subd. (d)).

Harris and Kwana were jointly tried by a jury.  As relevant here, the trial court instructed the jury on principles of malice aforethought and first degree murder (CALCRIM Nos. 520, 521), the natural and probable consequences doctrine based on the uncharged target offense of assault with a deadly weapon (CALCRIM Nos. 403, 875), and the personal and intentional discharge of a firearm causing death (CALCRIM No. 3150).

The jury convicted Harris and Kwana of the first degree murder of Alexander.  The jury found true that Harris personally and intentionally discharged a firearm causing Alexander's death.  The court sentenced Harris to life without the possibility of parole for the first degree murder of Alexander and 25 years to life on the personal and intentional use enhancement under section 12022.53, subdivision (d).

In 2024, Harris filed a form petition for resentencing under section 1172.6.  The trial court appointed counsel.  The People opposed the petition, arguing that the jury found Harris personally shot Alexander and convicted him as the actual killer.  Harris argued in reply that the People's position required the trial court to engage in impermissible factfinding and that the

---

[4]    Harris was also charged with and convicted of second degree murder in a shooting that occurred months after Alexander's murder.  Harris's appeal challenges the trial court's denial of his petition only with respect to his conviction for the first degree murder of Alexander.

true finding on the firearm enhancement did not establish as a matter of law that he personally harbored malice.

The trial court denied the petition. The court concluded that the record of conviction established that the jury convicted Harris of first degree murder as the actual shooter and therefore did not rely on the natural and probable consequences doctrine as a basis for his liability.

Harris timely appealed.

## DISCUSSION

### I. Applicable Legal Principles and Standard of Review

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The bill amended section 188, requiring that to be convicted of murder, "a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also created "a procedural mechanism for those previously convicted of murder under a theory amended in [Senate Bill No. 1437] to petition for resentencing." (*People v. Emanuel* (2025) 17 Cal.5th 867, 880; see also *Lewis*, *supra*, 11 Cal.5th at p. 959.) "The process begins with the filing of a petition that declares, among other things, that '[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill No. 1437. (§ 1172.6, subd. (a)(3); see *id*., subd. (b)(1)(A).)" (*Emanuel*, at p. 880.) "After the parties

4

have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "[A] trial court may properly, at the prima facie stage, reference the record of conviction to ' " 'refut[e]' " ' [citation] conclusory allegations in furtherance of its statutorily required screening function at that juncture of a section 1172.6 proceeding." (*People v. Patton* (2025) 17 Cal.5th 549, 569 (*Patton*).) "[P]etitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id.* at p. 567.) However, a court may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at pp. 971, 972.)

" 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*People v. Antonelli* (2025) 17 Cal.5th 719, 724.) "Otherwise, the court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3))." (*People v. Wilson* (2023) 14 Cal.5th 839, 869.)

5

"We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.)

## II.  The Record of Conviction Establishes Harris Is Ineligible for Relief as a Matter of Law

Harris is ineligible for resentencing relief under section 1172.6 because he was convicted under a theory of liability that remained valid after Senate Bill No. 1437 amended the Penal Code.  The record of conviction conclusively establishes that the jury convicted Harris of first degree murder as the direct perpetrator of the shooting that killed Alexander, foreclosing the possibility that the jury applied the natural and probable consequences doctrine as a basis for his liability.

The information charged Harris with Alexander's murder. It also alleged that during the commission of the murder, Harris "personally and intentionally discharged a firearm, a handgun, which proximately caused great bodily injury and death to Eric Alexander" under section 12022.53, subdivision (d).  During closing argument, the prosecutor identified Harris as "the actual shooter" and "the actual killer" in Alexander's murder.[5]

---

[5]  We take judicial notice of the reporter's transcripts reflecting the closing arguments and reporting the delivery of the jury's verdicts in the underlying trial, which were part of the record on direct appeal. (*People v. Harris*, *supra*, B222583; see Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  Although the trial court did not rely on these materials, they are part of the record of conviction.  As we will affirm the trial court's order on any ground disclosed by the record, we consider these portions of the record of conviction.  (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

The court instructed the jury that to find Harris guilty of first degree murder, it had to conclude that the People proved he acted willfully, deliberately, and with premeditation, which encompasses the specific intent to kill. (CALCRIM No. 521 ["The defendant acted willfully if he intended to kill."]; see also *People v. Heffington* (1973) 32 Cal.App.3d 1, 11 ["aside from felony murder, a specific intent to kill is a necessary ingredient of first degree murder"].) The court further instructed the jury that it could only return a true finding on the firearm enhancement if the People proved that Harris personally discharged a firearm during the commission of the murder, he intended to discharge the firearm, and his act caused Alexander's death. (CALCRIM No. 3150; see *In re Ferrell* (2023) 14 Cal.5th 593, 603.) The jury convicted Harris of first degree murder and found true that he intentionally discharged a firearm causing Alexander's death.[6]

Although there was a codefendant in this case, the only theory presented to the jury was that Harris shot and killed Alexander, and Kwana was an aider and abettor. The jury's finding on the personal use of a firearm enhancement as to Harris demonstrates that the jury accepted that theory. While the court instructed the jury on the natural and probable consequences doctrine, the jury could not have applied that theory to Harris.

---

[6] The jury also convicted Kwana of first degree murder. Although the trial court and counsel in these proceedings referred to an information charging Kwana with a principal use firearm enhancement under section 12022.53, subdivisions (b) and (e)(1), it appears from the reporter's transcript reflecting the reading of the jury verdicts that no firearm enhancement was presented to the jury as to Kwana.

7

The natural and probable consequences instruction permitted the jury to convict a defendant of murder if the defendant committed or aided and abetted assault with a deadly weapon, *a coparticipant in the assault with a deadly weapon committed the crime of murder*, and a reasonable person in the defendant's position would have known the commission of the murder was a natural and probable consequence of the commission of the assault with a deadly weapon.[7] (CALCRIM No. 403.) In other words, the jury could impose natural and probable consequences liability only on a defendant who did *not* commit murder during the commission of the underlying assault.

To this end, the prosecutor expressly argued to the jury that this instruction could apply to hold Kwana, not Harris, liable for murder. Specifically, the prosecutor described Kwana as an aider and abettor who set up Alexander's murder and drove Harris to the location where he killed Alexander. The prosecutor stated that if the jury found that Kwana "only intended to aid and abet as assault . . . and then [Christopher] Harris went further and fired seven bullets into Stoney Alexander, then she would be guilty of being an aider and abettor to assault with a firearm, the natural result or within the normal range of outcomes is murder[,] even if [Christopher] took it farther than what she had originally intended."

*People v. Morales* (2024) 102 Cal.App.5th 1120 (*Morales*) is instructive. Morales and his codefendant were charged in connection with a robbery of an armored truck. (*Id.* at p. 1123.) A jury found Morales guilty of robbery, assault with an assault

---

[7]   The instruction informed the jury that "[a] coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator."

8

weapon, and the attempted premeditated murder of an employee of the truck company.  (*Id*. at p. 1127.)  The jury also found true that he personally and intentionally discharged a firearm and caused great bodily injury in the commission of the robbery and attempted murder.  (*Id*. at pp. 1127–1128.)

Morales subsequently petitioned for resentencing on his attempted murder conviction under section 1172.6.  (*Morales*, *supra*, 102 Cal.App.5th at p. 1128.)  The Court of Appeal affirmed a trial court order denying the petition.  (*Id*. at p. 1131.)  The court noted that the "*only* factual basis" the prosecution alleged to prove a "direct but ineffectual act toward killing" the employee—an element of attempted murder—was Morales shooting him with a semiautomatic rifle.  (*Id*. at p. 1132.)  By concluding Morales committed assault with an assault weapon and personally discharged a firearm causing injury, "the jury found Morales was the robber who shot [the employee] with the AK-47 semiautomatic rifle and, therefore, he was the direct perpetrator of the attempted premeditated murder."  (*Ibid*.)

The court rejected Morales's argument that the jury could have found Morales guilty as an aider and abettor under the natural and probable consequences doctrine.  (*Morales*, *supra*, 102 Cal.App.5th at pp. 1132–1133.)  The court reasoned: "[I]f the jury had found Morales guilty of attempted premeditated murder under the natural and probable consequences theory, it would not have found true the allegation that he personally discharged a firearm causing great bodily injury.  We agree with the trial court's reasoning: 'once the jury found that Morales was the shooter, the natural and probable consequence theory of liability for Morales became inapplicable.  It would only have

9

been applicable if the jury had found that [the codefendant] (not Morales) was the shooter.' " (*Id*. at p. 1133.)

The same rationale applies to Harris's case. The People's sole theory of liability regarding the first degree murder count was that Harris shot and killed Alexander as the direct perpetrator. The jury found Harris was the shooter and, under the circumstances of this case, the direct perpetrator of the murder, foreclosing the applicability of the natural and probable consequences doctrine to his conviction. (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 281–282 [defendant ineligible for § 1172.6 relief because undisputed facts in record of conviction established prosecution only pursued theory that defendant was direct perpetrator of attempted murder].)

Harris argues that the jury's true finding on the firearm enhancement under section 12022.53, subdivision (d), did not supply the requisite finding of malice that would preclude him from prima facie eligibility for resentencing. However, the true finding on the firearm enhancement is relevant here not because it conclusively demonstrates a finding of malice, but because it established Harris's specific role as the shooter and therefore as the direct perpetrator of first degree murder. (*Morales*, *supra*, 102 Cal.App.5th at pp. 1133–1134 [attempted murder conviction established malice and § 12022.53, subd. (d) finding showed defendant was direct perpetrator].) Since the jury found Harris was the actual shooter, not an aider and abettor, the jury's guilty verdict for first degree murder established that Harris personally "acted willfully, deliberately, and with premeditation," and therefore intended to kill. (CALCRIM No. 521.)

*People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), which Harris cites in support of his arguments, is readily

10

distinguishable. There, the defendant was one of five people charged with participating in a gang-related shooting. At least three of the defendants fired shots into a car. One victim was killed and another was seriously wounded. (*Id.* at p. 592.) The jury received a natural and probable consequences instruction as to conspiracy, convicted the defendant of second degree murder, and found a section 12022.53, subdivision (d) allegation true. (*Id.* at p. 593.)

On appeal from the denial of Offley's resentencing petition, the Court of Appeal concluded the defendant was not ineligible for section 1172.6 resentencing relief as a matter of law because the jury's verdict did not rule out the possibility that it relied on the natural and probable consequences doctrine to convict him. (*Offley*, *supra*, 48 Cal.App.5th at p. 599.) The court held that the jury's true finding on the firearm enhancement established only that the defendant had the general intent to discharge a firearm and did not reflect a finding that he had the intent to kill or any other form of malice aforethought. (*Id.* at pp. 597–598.) The language of the natural and probable consequences instruction for conspiracy, supported by the prosecutor's express arguments that the jury could convict Offley based on this instruction, permitted the jury to convict Offley of second degree murder even if he intended solely to take part in a conspiracy to commit assault with a firearm, and neither harbored the intent to kill the victim, nor acted in conscious disregard of the risk to life. (*Id.* at p. 599.)

In contrast, here, the jury could not have concluded Harris was the actual shooter and also applied the natural and probable consequences instruction to convict him. The jury's true finding on the section 12022.53, subdivision (d) allegation established

11

that Harris shot and killed Alexander.  Neither the People's theory of the case nor the jury's findings permitted the conclusion that someone else fired a weapon or shot and killed Alexander. (See *Patton*, *supra*, 17 Cal.5th at p. 567 [absent specific facts identifying someone else as the direct perpetrator, no material fact dispute arises "from mere latent, speculative possibilities . . . a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion"].)  And, as explained above, the jury instruction allowed the jury to apply the natural and probable consequences theory when the defendant aided and abetted an assault and a *coparticipant* committed murder during the commission of the assault.  The jury was not provided any basis to apply the natural and probable consequences doctrine to the "coparticipant" who actually shot and killed Alexander.

The jury's verdict convicting Harris of first degree murder as the actual killer could only be based on its finding that Harris personally acted with malice aforethought.  (See *Offley*, *supra*, 48 Cal.App.5th at p. 599 ["[i]n many instances, additional information from the record will establish that a defendant's conviction was not based on the natural and probable consequences doctrine, and that the jury must have convicted the defendant on the basis of his own malice aforethought"]; see, e.g., *People v. Saavedra* (2023) 96 Cal.App.5th 444, 450, 448, 449 [plea could not reasonably be construed as imposing natural and probable consequences liability where defendant admitted he personally discharged firearm into occupied vehicle "*in an attempt to murder* [victims]" because he did not act vicariously].) Harris was ineligible for relief as a matter of law.

## DISPOSITION

The trial court's order denying Harris's petition for resentencing under section 1172.6 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


EGERTON, Acting P. J.


HANASONO, J.